## IN RE WOLFE.

[Cite as *In re Wolfe* (1992), 82 Ohio App.3d 675.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–03.

Decided Sept. 30, 1992.

676

*di Trapano & Jackson* and *Rudolph L. di Trapano; Rebecca A. Baitty; Emens, Hurd, Kegler & Ritter* and *Michael E. Zatezalo,* for appellant Judith A. Wolfe.

*Lee Fisher,* Attorney General, and *Odella Lampkin,* Assistant Attorney General, for appellee State Medical Board of Ohio.

---

BOWMAN, Judge.

On April 11, 1984, appellant, Judith A. Wolfe, M.D., filed an application with appellee, State Medical Board of Ohio, for medical licensure in Ohio. On the application, in response to the question of whether any license entitling her to practice medicine had been suspended, surrendered or revoked, appellant replied:

" * * * West Virginia * * * Dec. 6, 1983 * * * Alleged violation WVA Administrative Regulations—License is restored now and allegations unproven."

In addition, in response to the question of whether or not she had ever been denied or dismissed from hospital staff privileges, appellant replied:

" * * * Memorial General Hospital, Elkins, W.Va. 26241—License suspended 12/6/83 and now restored since 2/84—allegations unproven—You may contact the Attorney who represented me * * *."

On January 10, 1985, the medical board notified appellant that it intended to deny her application for a certificate to practice medicine or surgery because her license to practice medicine in West Virginia had been revoked or suspended beginning on or about December 6, 1983 and ending on or about March 2, 1984, and because misstatements in her application and in the sworn statement signed by her on May 10, 1984 constituted fraud, misrepresentation or deception. The medical board determined that appellant's misstatements on her application demonstrated a lack of good moral character which was required for a certificate to be issued.

The medical board notified appellant that she was entitled to a hearing on the matter and that she had the right to appear at the hearing in person or with her attorney. In response to this notice, appellant wrote a letter to the medical board requesting a hearing and stating:

"I am indeed sorry that the interpretation of my statement on the application has been misconstrued so as to effect an atmosphere of fraud or lack of moral character.

"It was my full intention to encourage and allow the State Board of Ohio to speak with the attorneys who represented me in this matter, and in so listing

them by name, address and permission, leave the door open for full exploration of the facts.

"I hold now and have held since March 2, 1984 an unrestricted license in West Virginia.

"There are some misstatements regarding events in Elkins, which were presented in your letter. These are best cleared in person with supporting evidence from the Feb. 13–15, 1984 Hearing."

The medical board notified appellant of her hearing date on January 25, 1985 and, on February 15, 1985, appellant's counsel wrote the medical board, requesting that the Ohio hearing be postponed until the judicial review of the West Virginia suspension was completed. The continuance was granted and the hearing was ultimately held on March 8, 1988 before hearing examiner Juanita Sage. Neither appellant nor her attorney appeared at the hearing; however, the medical board appeared and, through its counsel, introduced into evidence documentation from the West Virginia Board of Medicine ("WVBM") concerning the allegations against appellant in West Virginia.

This evidence indicates that appellant was licensed to practice medicine in West Virginia in 1981 and that her practice has been specialized in the areas of otolaryngology and head and neck surgery. Appellant has practiced medicine and surgery within her specialty as an employee of the Memorial General Hospital Association since 1981 and she enjoyed the reputation of being an exceptionally well-qualified and skilled physician.

Allegedly, as a result of actions which occurred on September 7 and 8, 1983, Memorial General Hospital temporarily suspended appellant's medical privileges at its facilities. This suspension was made permanent by action of Memorial General Hospital's Board of Directors on October 17, 1983. On November 14, 1983, the WVBM summarily revoked appellant's license to practice medicine in West Virginia based on the allegations which were furnished to it by the administration of the Memorial General Hospital Association.

On December 6, 1983, the WVBM filed a notice of summary revocation and caused the notice to be hand-delivered to appellant on the following day. An amended complaint was filed by the WVBM on January 31, 1984, and it charged that actions allegedly taken by appellant on September 7 and 8, 1983, as well as October 5, 1983, were grounds for revocation of her license pursuant to West Virginia Code 30–3–14(c). The amended complaint limited the charges against appellant to professional incompetence in the treatment of four patients through her contamination of sterile procedures used in surgery on those patients; professional incompetence through improperly removing two five-cc containers of four-percent solution of cocaine from the Memorial

General Hospital Emergency Room; inability to practice medicine and surgery with reasonable skill and safety due to physical or mental disability including deterioration through loss of motor skill or abuse of drugs or alcohol; prescribing, dispensing, administering, mixing or otherwise preparing the two missing containers of cocaine other than in good faith and in a therapeutic manner in accordance with accepted medical standards and in the course of appellant's professional practice; and failing to keep written medical records justifying the course of treatment of a patient with the two missing containers of cocaine.

A hearing was held on the charges from February 13, 1984 through February 15, 1984 before hearing examiner Joe Richards, who was appointed by the WVBM. On February 22, 1984, following the hearing, the hearing examiner rendered his report, including findings of fact and conclusions of law, wherein he concluded that the evidence presented at the hearing, while establishing that appellant had acted in an unprofessional manner in certain respects and had violated her employer's institutional standards of sterility, had not established any acts of professional incompetence or any violation of accepted medical standards for sterility. The hearing examiner also found that no evidence was admitted which suggested any alcohol or drug abuse on the part of appellant.

On February 25, 1984, the WVBM filed its own findings and conclusions and concluded that two acts performed by appellant on September 7 and 8, 1983, had violated accepted medical standards of sterility and constituted professional incompetence. The WVBM also found that certain other actions of appellant on those dates did not constitute professional incompetence but were a clear cause of concern to the WVBM, particularly in light of appellant's prior history as a highly qualified and skilled physician.

The WVBM acknowledged that none of the allegations regarding missing vials of cocaine had been proven and that the charges which accused appellant of professional incompetence and improper drug dispensing were without merit. The WVBM also conceded that no evidence was presented to suggest that appellant was, at any time, under the influence of any drug. The WVBM also acknowledged that the evidence had failed to establish any mental or physical disability affecting appellant in that the only medical evidence in the record relating to this charge had negated any disability in that respect. Regardless, the WVBM ordered appellant to undergo a complete mental and physical examination by experts designated by it.

The WVBM then issued its decision and ordered that its earlier summary revocation of appellant's medical license be rescinded, but ordered that her

license be suspended pending the WVBM's evaluation of the physical and mental examinations it had ordered.

Following the February 25, 1984 order of the WVBM, appellant filed a timely petition for review of the order in the Circuit Court of Kanawha County, West Virginia, and requested that it stay that portion of the February 25, 1984 order which suspended her license. On March 2, 1984, the circuit court stayed the WVBM's suspension order and ordered that appellant's license be reinstated in full force pending judicial review. The circuit court then, following a hearing, denied the WVBM's motion to dissolve the stay.

On March 15 and 16, 1984, appellant underwent a complete mental and physical examination at the University of Pittsburgh's Western Psychiatric Institute, the facility designated by the WVBM. Thereafter, by order of July 16, 1984, the WVBM ruled that the comprehensive and well-reasoned physician's reports from the examinations were sufficient to rule out any significant physical or mental disability which might currently affect appellant's ability to practice medicine and surgery. The WVBM then determined that the period during which appellant's license to practice medicine and surgery was under revocation or suspension, December 6, 1983 until March 2, 1984, was sufficient and was an appropriate sanction for the acts of professional incompetence previously established. The WVBM then formally reinstated appellant's license to practice medicine and surgery in West Virginia.

Following the WVBM's July 16, 1984 order, appellant's previously filed petition became ripe for review, and the circuit court issued an opinion on January 17, 1986. In reviewing the proceedings by the WVBM, the circuit court stated that it was convinced that the information available to the WVBM at the time of its summary action was insufficient for it to reasonably conclude that appellant's continuation in practice constituted an immediate danger to the public. As such, the WVBM's order of February 25, 1984, to the extent that it found appellant unqualified to practice medicine and surgery due to professional incompetence, was clearly wrong in view of the reliable, probative and substantial evidence on the whole record. Thus, that order, to the extent that it suspended appellant's license pending completion of a physical and mental examination, was in excess of the WVBM's statutory authority, or was arbitrary, capricious and constituted an abuse of, or clearly unwarranted exercise of, discretion.

The circuit court also found that the WVBM's order that suspended appellant's license and required her to submit to a physical and mental examination constituted either an abuse of discretion or was a clearly unwarranted exercise of discretion. Further, the circuit court concluded that the WVBM's summary revocation of appellant's license without either a hearing or a

thorough independent investigation was in excess of its authority, or constituted an abuse of discretion, or was a clearly unwarranted exercise of discretion, because the evidence available to the WVBM at the time of its summary action was limited to unsubstantiated allegations, many of which were trivial. In addition, the WVBM's order of July 16, 1984, to the extent that it found the three-month period during which appellant's license had been suspended to be an appropriate sanction for the alleged acts of professional incompetence, was clearly wrong and constituted an abuse of, or a clearly unwarranted exercise of, discretion.

Based on the foregoing, the circuit court ordered that the WVBM's orders of December 6, 1983, February 25, 1984 and July 16, 1984, to the extent that they found appellant to have committed any acts of professional incompetence and to the extent that such orders imposed any disciplinary action upon appellant, were vacated and reversed. The WVBM was then ordered to expunge from its records any reference to the charges which led to these proceedings or to its orders at issue in the case. The WVBM was also ordered that neither it nor its employees or agents should disclose to any other person whatsoever any information concerning the charges or orders concerning appellant, except by order of the circuit court.

Following the admission of the foregoing evidence and after hearing arguments on behalf of the medical board, the hearing before hearing examiner Sage concluded. On May 29, 1988, the hearing examiner rendered her report and recommendation including findings of fact and conclusions of law. In this report, the hearing examiner concluded that there was no violation, departure from, or failure to conform to minimal standards of care of similar practitioners under the same or similar circumstances. However, the hearing examiner found that appellant committed fraud, misrepresentation or deception in applying for or securing a license or certificate issued by the medical board because appellant intentionally misrepresented the status of the West Virginia action in completing her licensure application because "she [appellant] perceived it as potentially damaging." The hearing examiner also concluded that appellant had failed to furnish satisfactory proof of good moral character, which was required for a certificate to be issued to her. The hearing examiner then recommended that appellant's application for licensure to practice medicine and surgery be denied, and that appellant not be eligible to apply for or obtain licensure to practice medicine and surgery or its related branches in the state of Ohio in the future.

Appellant filed objections to the report of the hearing examiner and, with her objections, appellant filed additional exhibits for the medical board to consider. The medical board, through counsel, filed a motion to strike part of

the materials contained in appellant's objections based on the fact that the exhibits constituted additional evidence.

In discussing the issue, one member of the medical board suggested that the matter could be remanded to the hearing examiner so that appellant could introduce the additional evidence and the medical board could have the opportunity to respond. However, the medical board granted the motion to strike. A motion was then entertained to remand the matter to the hearing examiner to consider the additional evidence and the medical board's response. After a discussion concerning the fact that appellant had had the opportunity to appear at the hearing and present evidence on her behalf but had not taken advantage of that opportunity or the due process afforded her, and concerning establishing a precedent of giving individuals a number of chances to be heard before the board, a roll call vote was taken and the motion was defeated.

The medical board also addressed the motion filed by appellant's counsel to orally address the board and, after a vote, the motion carried. A call was then placed to appellant's counsel's office and the medical board was advised that appellant's counsel was in a trial and would not be appearing before it.

Thereafter, the medical board adopted the report of the hearing examiner and modified her recommendation to the extent that appellant would be permitted to apply for licensure in the state of Ohio again in the future. The board ordered that appellant's application for licensure to practice medicine and surgery in the state of Ohio be denied.

Appellant appealed the medical board's decision to the court of common pleas and the matter was referred to a referee. In her brief before the referee and the common pleas court, appellant attached six exhibits relating to the case. The medical board filed a motion to strike five of these exhibits based on the fact that they were not a part of the record and, therefore, constituted additional evidence. The record indicates that the board's motion to strike was never ruled on by the trial court or the referee.

In his report, after adopting the statement of facts submitted by counsel for the medical board, the referee stated:

"The dissatisfying aspect of this case is that Dr. Wolfe did not appear before the appointed hearing examiner to offer her testimony. The hearing examiner had no opportunity to consider her credibility and the reasonableness of her statement that she was reporting the truth, as she understood it, in her certificate application.

"* * *

"Reliable, probative and substantial evidence supports the Board's decision but essential evidence, as discussed above, was not offered. A reapplication

by Dr. Wolfe, with her subsequent testimony will provide all parties a more meaningful result than the Order before this Court which must, it is recommended, be AFFIRMED."

No objections to the referee's report were filed and, on November 1, 1991, the trial court found that the board's order was supported by reliable, probative and substantial evidence, and was in accordance with the law. As such, the order was affirmed.

Appellant now brings this appeal and asserts the following assignments of error:

"I. The court of common pleas erred in refusing to remand this case to the Ohio board, to enable it to consider the evidence it overlooked or improperly excluded.

"II. The court of common pleas erred in ruling that substantial evidence supported the Ohio board's decision that Dr. Wolfe's Ohio application should be denied because of her intentional misrepresentation of the status of her West Virginia license."

R.C. 119.12 establishes the scope of review on appeals from the medical board's denial of a license application and provides that the trial court may affirm the order if it finds, upon consideration of the entire record, that the order is supported by reliable, probative and substantial evidence and is in accordance with law. In the absence of such a finding, the trial court may reverse, vacate or modify the order, or make such other ruling as is supported by reliable, probative and substantial evidence and is accordance with law.

Under R.C. 119.12, a trial court conducts a hybrid form of review. In determining if an agency order is supported by reliable, probative and substantial evidence, a trial court must necessarily weigh the evidence presented to the agency and, to a limited extent, may re-evaluate the credibility of the evidence. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. In *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390, the court acknowledged that determining whether an agency order is supported by reliable, probative and substantial evidence is essentially a question of the absence or presence of the requisite quantum of evidence. This inevitably involves a consideration of the evidence and, to a limited extent, would permit a substitution of judgment by the reviewing trial court. Where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the trial court may reverse the administrative order.

In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order.

It is incumbent upon the trial court to examine the evidence; however, this is not the charge to the appellate court. The appellate court's function is to determine only if the trial court abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264. An abuse of discretion connotes more than an error of judgment; it implies a decision which is without a reasonable basis or one which is clearly wrong. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280.

In *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 590 N.E.2d 1240, the issue specifically before the court was whether an abuse-of-discretion standard was the correct standard to apply in reviewing an appeal pursuant to R.C. 119.12. In relying on *Lorain City Bd. of Edn.* and *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, the court stated, 63 Ohio St.3d at 707, 590 N.E.2d at 1241:

" * * * The court of appeals, in affirming the judgment of the trial court, determined that the trial court did not abuse its discretion in finding that the state board's order was supported by reliable, probative and substantial evidence and was in accordance with law. In utilizing this standard of review, the court of appeals clearly did not deviate from the standard set forth in *Lorain, supra.*"

Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See *Rohde*. Based on these guidelines, this court will address appellant's assignments of error.

In her first assignment of error, appellant asserts that the trial court erred when it refused to remand the case to the medical board so that it could consider the evidence that it overlooked or improperly excluded. Appellant asserts that the medical board erred when it refused to consider the evidence proffered by her in her objections to the hearing examiner's report and that it failed to consider the newspaper article which was attached to her May 10, 1984 sworn statement.

At the outset, it must be noted that neither appellant nor her counsel appeared at the hearing, and that both the hearing examiner and counsel for the medical board made a number of attempts to have a conference call with appellant's counsel about the hearing, and about appellant's request to withdraw her application from consideration by the medical board. None of these attempts at a conference call were successful and the record of the hearing shows that appellant's counsel indicated that neither he nor appellant would attend the hearing. Consequently, appellant did not present any evidence at the hearing.

After the report and recommendation of the hearing examiner was received, appellant filed objections to the report and included a number of exhibits in support of her objections. However, appellant did not file a motion to reopen the hearing record for purposes of introducing newly discovered material, pursuant to Ohio Adm.Code 4731–13–15(F), so that this evidence could be considered by the medical board. Even if appellant had filed such a motion, it is unlikely that it would have been granted since Ohio Adm.Code 4731–13–15(F) requires that the evidence must be newly discovered material evidence which, with reasonable diligence, could not have been discovered and produced at the hearing. From the face of the documents, it is obvious that they could have been presented at the hearing had appellant or her counsel attended.

Appellant also attached additional evidence in support of her position when she filed her brief in the court of common pleas. Once again, appellant did not request the admission of this additional evidence as required by R.C. 119.12. Further, the trial court would have been correct had it denied a request to add additional evidence since this evidence was not newly discovered and could have, with reasonable diligence, been ascertained prior to the hearing before the medical board.

Appellant repeatedly refers to a newspaper article which was alleged to be attached to a May 10, 1984 sworn statement which she provided to the medical board. While the sworn statement is a part of the record, the newspaper article which was to be attached to the statement is not.[1] Because the newspaper article is not in the record, this court can only assume that it was not before the medical board and that the board did not consider it as evidence in support of appellant's position in this matter.

The court concludes that the trial court did not err in refusing to remand the case to the medical board to enable it to consider the evidence attached in appellant's objections to the referee's report or to consider a newspaper article which is not in the record. Had appellant wanted the medical board to have this evidence, she, or her counsel, could have presented the evidence themselves had they chosen to attend the hearings. Accordingly, appellant's first assignment of error is not well taken.

In her second assignment of error, appellant asserts that the trial court erred in finding that there was reliable, probative and substantial evidence to support the medical board's decision that appellant intentionally misrepresented the status of her West Virginia license.

---

1. The sworn statement merely states: "The attached newspaper article is self-explanatory."

 This court is mindful that it cannot consider questions of the weight of the evidence or make factual determinations, but must limit itself to a determination of whether or not the trial court abused its discretion. A decision of the medical board can be reversed only when it is found to be so contrary to the natural reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. See *Sambunjak v. Bd. of Review* (1984), 14 Ohio App.3d 432, 14 OBR 550, 471 N.E.2d 835. Because this court finds that the medical board's decision was not supported by reliable, probative and substantial evidence, this court finds that the trial court abused its discretion in affirming the board's order.

R.C. 4731.22(A) provides:

"The state medical board, pursuant to an adjudicatory hearing under Chapter 119. * * * may refuse to grant a certificate to a person found by the board * * * to have committed fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board."

In this case, the medical board determined that appellant intentionally misrepresented the status of her West Virginia license when she made her application for licensure in Ohio. Appellant, on her application, indicated that her license in West Virginia had been suspended, that she had been denied or dismissed from hospital staff privileges, and that her West Virginia license was currently restored. Thereafter, appellant provided the medical board with a sworn statement, which included the alleged missing newspaper article, and gave detailed information to the medical board regarding the alleged violations that had occurred in West Virginia. She also stated:

"I was suspended on September 8, 1983 from the Memorial General Hospital * * *, Elkins, West Virginia * * *. The hospital notified the West Virginia Board of Medicine of the alleged violations on September 8, 1983. * * * On October 5, 1983 I met with the Executive Committee of the MGH Association and they voted to permanently suspend my privileges.

"On October 17, 1983, in a closed session where neither I nor my attorney were allowed to be present, the Board of Directors confirmed the decision to permanently suspend my privileges from the Hospital and the Golden Medical Group Clinic for the alleged violations.

"On December 6, 1983 I received notice from the W.Va. Board of Medicine that due to: *Alleged violation of W.Va. administrative regulations*—my license was suspended.

"* * *

"At a Hearing with the W.Va. Board of Medicine on Feb. 13, 14, and 15, 1984, the action was rescinded; because the charges were not substantiated.

"On March 2, 1984, my license to practice Medicine was restored by Judge Patrick Casey of the Circuit Court of Kanawha County." (Emphasis *sic.*)

Appellant's statements regarding the events that occurred in West Virginia indicate her belief that she accurately reported the situation that occurred. These statements are substantiated by the evidence in the record from the WVBM, and the March 2, 1984 order by Judge Patrick Casey of the circuit court indicates that appellant's license to practice medicine was reinstated in full force, pending judicial review. The final determination of the judicial review occurred January 17, 1986, wherein the WVBM's orders were vacated and reversed, and any reference to the charges which led to the proceedings or the WVBM's orders at issue in the case were expunged. Thus, appellant did not make any misrepresentations to the medical board about the proceedings in West Virginia. In addition, she provided the medical board with the authority to contact her attorneys and other parties involved in the West Virginia proceedings had the board wanted further information. While there can be little doubt that the decision of appellant and/or her attorney not to appear before the hearing examiner or the medical board is the source of her current licensing problems, we cannot find that there was reliable, substantial and probative evidence that appellant misrepresented the status of her license in West Virginia. Appellant applied for her Ohio license after her license had been suspended and was restored by the circuit court. The medical board had before it evidence which showed that all of the allegations charged against appellant in West Virginia were unfounded. While some of appellant's statements may have been technically inaccurate, as the entire proceeding in West Virginia did not conclude until 1986, her license suspension had been stayed and her license restored in 1984, and we cannot find sufficient evidence that her statements were made with an intent to mislead the medical board.

This court believes that it would be a substantial miscarriage of justice if after all of the allegations were cleared and expunged from her record in West Virginia, the medical board could seize on appellant's somewhat inept manner of disclosing the West Virginia proceedings in Ohio as a reason for denying her licensure here. Although the medical board indicated that appellant could reapply for licensure in Ohio, the fact that she was denied licensure in Ohio will harm appellant's medical career far more than the proceedings in West Virginia, where she was completely exonerated from all of the charges.

While appellant could have aided in the presentation of her case by appearing at the various hearings involved herein, she was not required to do so, see Ohio Adm.Code 4731-13-01, and she presented evidence which supported her position. Because this court finds that the trial court abused its discretion in

finding that the medical board's order was supported by reliable, probative and substantial evidence, appellant's second assignment of error is well taken.

For the foregoing reasons, appellant's first assignment of error is overruled and appellant's second assignment of error is sustained. The judgment of the trial court is reversed and this cause is remanded to the trial court with instructions to remand this matter to the State Medical Board of Ohio for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded with instruction.*

WHITESIDE and PEGGY BRYANT, JJ., concur.

WHITESIDE, Judge, concurring.

With the understanding, despite the reference only to abuse of discretion, that the opinion applies the legal standard of the syllabus of *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, I concur in the opinion and judgment. To the extent the common pleas court engages in the limited weighing of the evidence to reach its conclusion upon an R.C. 119.12 appeal, the abuse of discretion standard is appropriate. However, as held in *Univ. Hospital,* there also is the question of law as to whether the evidence is reliable, probative and substantial, determined without weighing the evidence or determining credibility of the witnesses, even in a limited sense. Such determination presents only a question of law and the abuse of discretion test does not apply. The difference is similar to that of the testing of a civil judgment on the separate issues of manifest weight and sufficiency of the evidence as a matter of law.